IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISAEL E. BARBA-REJON,<br><br>    Petitioner,<br><br>  v.<br><br>DERRAL G. ADAMS, Warden,<br><br>    Respondent._____/ | No. C 09-5052 CW (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

INTRODUCTION

Petitioner Misael E. Barba-Rejon, a state prisoner currently incarcerated at La Palma Correctional Center in Arizona, seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2006 conviction in the Contra Costa County Superior Court.

On February 17, 2010, the Court issued an Order to Show Cause why the writ should not be granted. On June 16, 2010, Respondent filed an Answer. Petitioner did not file a Traverse.

Having considered all of the papers filed by the parties, the Court DENIES the petition.

BACKGROUND

The state appellate court summarized the facts of the case as follows:

> At approximately 8:30 p.m. on April 15, 2005, Michael Kelly was driving on Highway 4 traveling eastbound on the Willow Pass grade between Concord and Pittsburg. Kelly was in the fast lane when he noticed a vehicle coming up behind him going at about 75 to 80 miles per hour, flashing its high beams. Kelly changed lanes and he saw that the vehicle speeding in the left lane was a red Dodge Durango. The Durango proceeded to swerve in and out of traffic and to tailgate for approximately a quarter mile. The traffic then slowed as the lanes merged from four lanes to two lanes just before the Loveridge Road exit.

Anthony Bastian was driving on Highway 4 towards Oakley when a red Durango passed him going approximately 80-90 miles per hour just before the overpass for Oakley Road. The Durango took the Oakley exit continuing on Highway 4 and turned right at a red light without stopping. When Bastian reached the stoplight at Neroly Road and Highway 4, he heard the sound of a collision up ahead. He saw the Durango upside down and observed another car severed in half.

Maria Betancur was leaving a Quinceañera rehearsal party at the Red Man Pocahontas Hall in Oakley at approximately 8:45 p.m. She saw Blanca Nieves, Victor Gonzalez, Jr., William Narez, and Gerardo Lepe leave the hall and get into a Honda Accord. The Honda was parked adjacent to the curb in front of the hall. Lepe drove the Honda away from the curb and started to move forward. Betancur approached her car and looked back at Lepe's car and noticed that there were headlights in the distance indicating a car was approaching toward Brentwood. She saw Lepe look over his left shoulder. He drove forward a slight distance before he started to turn toward the left lanes. Betancur looked back a second time and noticed that a car approaching the Honda was too close. At this point, the Honda was approximately halfway between the No. 1 lane and the turning lane. The Honda appeared to be approaching the turning lane to make a U-turn. The Durango hit the Honda's side between the middle of its two doors splitting it in half.

Deputy Sheriff Robert Roberts responded to the scene. He observed that the Durango was upside down on its hood in the No. 1 lane. Roberts heard screams and went to the Honda where he found two people inside who had no pulse. He called for assistance. Roberts found another man outside the Honda who was lying in a pool of blood. The Durango then caught fire. Defendant, who appeared to be dazed, was standing on the right shoulder of the road.

After the paramedics arrived, Roberts saw another victim lying on the side of the road. This female victim had no pulse.

Deputy Sheriff Jeffrey Gallegos also responded to the scene. Gallegos spoke with defendant who was very disoriented and confused. Defendant acknowledged that he was involved in the accident and said that he was not injured. Gallegos did not conduct any field sobriety tests of defendant because he opined that

2

defendant's disorientation was a result of being in the accident. When Gallegos asked defendant what happened, defendant said, "'The car pulled out in front of me.'" Gallegos did not suspect that defendant was under the influence and assumed any confusion or disorientation was a result of the severe accident.

    Deputy Sheriff Steve Borbely, the traffic investigations officer for Oakley, responded to the scene. He testified that the posted speed limit on Highway 4 is 45 miles per hour. He investigated the scene for physical evidence. He found no alcohol containers. There were no skid marks in the area of the collision. He, however, noticed skid marks in the gravel area where the Honda had been parked. Borbely testified that it was unlawful and unsafe to make a U-turn by turning from the curb across the No. 1 and No. 2 lanes of eastbound traffic and into the No. 1 westbound lane. He estimated that from the curb where the Honda was parked, the Durango's headlights would be visible from 1,204 feet away but would be obscured for about 317 feet where there is a dip in the road and would be again visible from a distance of approximately 887 feet. Borbely acknowledged that the Vehicle Code states that a minimum safe distance of an unobstructed view in which to make a U-turn is 200 feet. Based on his knowledge, training, and investigation of the accident, he opined that defendant may not have applied the brakes long enough to have an effect on the Durango's speed.

    Paramedics transferred defendant and Narez, the survivor from the Honda, to hospitals. Brandy Decker, who started defendant on a saline solution intravenously, detected an odor of alcohol from him as she was loading him in the ambulance. Defendant answered Decker's questions coherently and seemed sober. He denied that he was under the influence.

    Deputy Sheriff Ian Jones interviewed defendant in the emergency room of Sutter Delta Hospital. Defendant told him about the accident and his injuries. At approximately 12:50 a.m., defendant's blood was drawn. Defendant did not appear to be intoxicated.

    Narez testified that he could not remember the accident. He spent two months in the hospital and had four or five surgeries. The accident left him with numerous scars on his back, chest, and abdomen, and a scar on his throat from a tracheotomy. He also lost part of his lung and continues to have problems with

3

his breathing. In addition, he suffered a brain aneurysm and broken ribs. He was 15 years old at the time of the accident.

Stephanie Williams, a forensic toxicologist, testified that defendant's blood alcohol concentration was .06 percent. Using an average alcohol elimination rate of .015 percent per hour, and assuming that defendant did not drink any alcohol after the accident, Williams estimated that defendant's blood alcohol level four hours earlier at 8:50 p.m. was .12 percent. Williams opined that a person with a .12 blood alcohol level was under the influence of alcohol for the purposes of operating a motor vehicle safely. She further testified that blood alcohol elimination rates range from .01 to .02 and that even if defendant was at the lower elimination rate of .01, his blood alcohol level at the time of the accident would have been .10 and he would be under the influence of alcohol and unable to operate a motor vehicle safely. Williams also tested Lepe's blood sample and found no evidence of alcohol in his blood.

Deputy Sheriff David Heinbaugh was called to the scene and investigated the accident. In examining the accident scene, he determined that the Durango had been in the No. 1 lane while the Honda had travelled across the lanes perpendicular to the Durango's path. He concluded that the Durango's front license plate hit the Honda between its two driver's side doors. At the point of impact, the Honda's chassis failed, causing the two side doors to overlap.

Heinbaugh also opined that from the crash site, there was an unobstructed view of headlights from a distance of 800 feet. He estimated that it would take approximately eight seconds for someone travelling at 60 miles per hour, six and a half seconds for someone driving at 70 miles an hour, and five seconds if the speed was 80 miles per hour to travel 800 feet. He also testified that it is possible defendant could have applied the brakes without leaving any skid marks. Finally, Heinbaugh opined that the Honda made an unsafe and illegal U-turn.

Rudy Degger, an accident reconstruction specialist, relied on Heinbaugh's data and determined that the Durango's speed was "no less than 70 miles per hour."

(Resp't Ex. F at 2-5.)

4

A jury convicted Petitioner of three counts of vehicular manslaughter while intoxicated without gross negligence, one count of driving under the influence causing injury, and one count of driving with .08 percent blood alcohol causing injury. Thereafter, the trial court found true the great bodily injury sentencing enhancement under California Penal Code § 12022.7(a) alleged in connection with the latter two counts. The trial court sentenced Petitioner to seven years in state prison.

Petitioner timely appealed to the California Court of Appeal. On May 13, 2008, the appellate court affirmed the judgment of conviction, but modified the abstract of judgment to reflect the correct California Penal Code section under which Petitioner was convicted.[1] On May 30, 2008, Petitioner moved for a rehearing. On June 12, 2008, the appellate court denied rehearing. On June 20, 2008, Petitioner sought review in the California Supreme Court. On August 27, 2008, the California Supreme Court denied review.

Petitioner sought federal habeas relief in this Court on October 23, 2009. On November 4, 2009, Petitioner filed an amended petition.

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

---

[1] The trial court was directed to "prepare a modified abstract of judgment reflecting that defendant was convicted in counts one through three of vehicular manslaughter while intoxicated without gross negligence in violation of section 192, subdivision (c)(3), and to forward an amended abstract of judgment to the Department of Corrections and Rehabilitation." (Resp't Ex. F at 9.)

5

States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). The first prong applies both to questions of law and to mixed questions of law and fact, id. at 407-09, and the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

6

federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340. A petitioner must present clear and convincing evidence to overcome the presumption of correctness under § 2254(e)(1); conclusory assertions will not do. Id. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

When there is no reasoned opinion from the highest state court to consider a petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of section 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). In the present case, the California Court of Appeal is the highest court that addressed Petitioner's claims.

## DISCUSSION

Petitioner seeks habeas relief under 28 U.S.C. § 2254 based on his sole claim that the trial court violated his constitutional rights by failing "to sua sponte instruct the jury on Penal Code

7

section 12022.7 enhancement for Counts 4 and 5," and thereby failing "to define the direct causation element of 'personally inflicts' in order to distinguish it from proximate cause theories on which the prosecution relied and on which the court instructed . . . ."  (Am. Pet. at 6.)  Specifically, Petitioner argues that the lack of an instruction on the great bodily injury enhancement creates the reasonable likelihood that the jury applied the wrong standard for causation in deciding whether he "personally inflicted" great bodily injury on Narez.  (Id.)

The appellate court described the factual background of this claim as follows:

> Defendant was charged in counts four and five with an enhancement under section 12022.7, subdivision (a) alleging personal infliction of great bodily injury on Narez.  The court failed to instruct on the enhancement. Instead, the only reference to the enhancements was contained on the verdict forms for counts four and five. On the forms, the jury was instructed to make a finding on the enhancement if it found defendant to be guilty of the charged counts.[FN3]
>
> [FN3.] The following was set forth on the verdict forms for counts four and five: "INSTRUCTION TO THE JURY: USE THE FOLLOWING FINDING **ONLY** IF THE JURY HAS FOUND THE DEFENDANT TO BE **'GUILTY'** OF THE ABOVE OFFENSE [¶] We, the Jury find the further allegations pursuant to Penal Code section 12022.7(a), that in the commission and attempted commission of the above offense, that the Defendant, MISAEL EDUARDO BARBA-REJON, personally inflicted great bodily injury upon William Narez, who was not an accomplice in the above offense to be _____."
> **TRUE/NOT TRUE**

(Resp't Ex. F at 5-6 (emphasis in original).)

The appellate court found that the trial court erred by failing to provide a jury instruction as to the sentence enhancement and that this failure amounted to constitutional

8

error, stating:

> It is well settled that the trial court is required to instruct on the elements of a sentence enhancement. (<u>Apprendi v. New Jersey</u> (2000) 530 U.S. 466, 490) "Except for sentence enhancement provisions that are based on a defendant's prior conviction, the federal Constitution requires a jury to find, beyond a reasonable doubt, the existence of every element of a sentence enhancement that increases the penalty for a crime beyond the 'prescribed statutory maximum' punishment for that crime. ([<u>Ibid.</u>]) Therefore, a trial court's failure to instruct the jury on an element of a sentence enhancement provision (other than one based on a prior conviction), is federal constitutional error if the provision 'increases the penalty for [the underlying] crime beyond the prescribed statutory maximum.' (<u>Ibid.</u>) Such error is reversible under <u>Chapman [v. California</u> (1967)] 386 U.S. [18,] 24 . . ., unless it can be shown 'beyond a reasonable doubt' that the error did not contribute to the jury's verdict." (<u>People v. Sengpadychith</u> (2001) 26 Cal.4th 316, 326.)
>
> Here, the court failed to give CALCRIM No. 3160 on the elements of the great bodily injury enhancement.[FN 4]
>
> [FN 4.] CALCRIM No. 3160 states in pertinent part: "If you find the defendant guilty of the crime[s] charged in Count[s] ___[,] . . . you must then decide whether[, for each crime,] the People have proved the additional allegation that the defendant personally inflicted great bodily injury on _____ <u>&lt;insert name of injured person&gt;</u> during the commission . . . of that crime. [You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime.] [¶] . . . [¶] <u>Great bodily injury</u> means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. [¶] . . . [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."
>
> The Attorney General argues that the court's instruction pertaining to the enhancement on the verdict form was sufficient. While this instruction alerted the jury to the requirement that it make a separate finding on the enhancement as to each count,

9

>   it failed to define great bodily injury, an element of the enhancement.[FN 5]
>
>   [FN 5.] The court had defined great bodily injury in connection with its instructions on vehicular manslaughter.

(Id. at 6-7 (alterations and emphasis in original).)

The appellate court then analyzed (1) whether the trial court was required to instruct the jury on its own motion on the meaning of "personal infliction," and (2) whether the trial court's error of omitting CALCRIM No. 3160 was harmless under the standard in Chapman,[2] as follows:

>   Defendant argues that the instructional error was prejudicial because the jury was not instructed that direct causation and not simply proximate causation, was required to support the great bodily injury findings. He relies on People v. Rodriquez (1999) 69 Cal.App.4th 341, 349-350. There, the court reversed a second strike allegation because the jury was erroneously instructed it could find that the defendant personally inflicted great bodily injury if it found proximate causation rather than requiring the jury to find personal infliction. (Id. at pp. 347-348.) The Rodriquez court did not give a CALJIC instruction on personal infliction of great bodily injury but rather gave an instruction drafted by the prosecutor that erroneously incorporated a definition of proximate cause. (Rodriquez, at pp. 346-347.) Division Two of the First Appellate District determined that the instruction was incorrect. "To 'personally inflict' an injury is to directly cause an injury not just to proximately cause it. The instruction was wrong because it allowed the jury to find against Rodriguez if the officer's injury was a 'direct, natural and probable consequence' of Rodriguez's action, even if Rodriguez did not personally inflict the injury." (Id. at pp. 347-348.)

---

[2] Pursuant to the harmless error review standard under Chapman, a state appellate court can affirm the judgment of a criminal conviction challenged on direct appeal only if it appears "beyond a reasonable doubt" that an incorrect instruction did not contribute to the verdict. 386 U.S. at 24.

10

Here, however, the jury was not instructed on proximate causation in connection with the finding on the enhancement. Rather, the only instruction given to the jury on the enhancement asked it to make a finding on whether defendant "personally inflicted great bodily injury upon William Narez . . . ." Contrary to defendant's argument, the court was not required to sua sponte instruct on the meaning of personal infliction. As the Supreme Court explained in People v. Cole (1982) 31 Cal.3d 568, 572, the Legislature could not have been clearer in the language of section 12022.7: "[T]he enhancement applies only to a person who himself inflicts the injury." Moreover, defendant did not request any clarification of the term or an instruction on the definition at trial. "In the absence of a specific request, a court is not required to instruct the jury with respect to words or phrases that are commonly understood and not used in a technical or legal sense." (People v. Navarette (2003) 30 Cal.4th 458, 503.)

Relying on People v. Guzman (2000) 77 Cal.App.4th 761, 764, defendant also contends that the jury's finding on the section 12022.7, subdivision (a) enhancement cannot be upheld because Lepe directly caused the injury by making an illegal and unsafe U-turn. In Guzman, the defendant was convicted of driving under the influence of alcohol and causing great bodily injury to another person as a result of an automobile collision in which he made an unsafe left turn in front of another vehicle. (Guzman, at pp. 762-763.) Like defendant here, the defendant in Guzman also argued that he did not personally inflict great bodily injury on the victim of the accident because the other driver involved in the accident was the one who directly performed the act that caused the injury. (Id. at p. 764.) The court rejected the argument, explaining that "when 'personally' is included in an enhancement statute, direct rather than derivative culpability is a precondition to increasing a sentence" and, hence, the defendant must directly cause the injury, not simply proximately cause it. (Ibid.) The court determined that the fact another vehicle was involved in the collision did not absolve the defendant of culpability for directly causing the injury. "More than one person may be found to have directly participated in inflicting a single injury . . . . Thus, the fact that the collision involved two vehicles does not absolve appellant of direct responsibility for [the victim's] injuries." (Ibid.)

11

>Here, as in <u>Guzman</u>, the jury's findings on the section 12022.7 enhancements were proper based on defendant's direct participation in causing the accident. He not only was driving under the influence of alcohol but was driving in excess of the speed limit. Defendant was not absolved of culpability simply because Lepe's actions may have contributed to the accident. In any event, in finding defendant guilty of counts four and five, the jury necessarily rejected the defense that Lepe caused the accident.
>
>In sum, while the court erred in failing to give CALCRIM No. 3160, the court's written instruction on the verdict forms together with the instructions as a whole adequately informed the jury of the relevant legal principles of the case. We, therefore, uphold the jury's findings on the enhancements.[FN6]
>
>[FN6.] That the jury did not find defendant guilty of vehicular manslaughter with gross negligence is not determinative of whether the jury would have also rejected the section 12022.7 enhancements. To make a true finding on the enhancements, the jury was required to find only that defendant personally inflicted great bodily injury on Narez -- that he was a direct cause of the injury.

(Resp't Ex. F at 7-9 (alterations in original).)

Petitioner cannot demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established law as determined by the United States Supreme Court. See 28 U.S.C. § 2254(d). Nor can Petitioner demonstrate that the state court's decision relied on an unreasonable determination of the facts.

First, the appellate court rejected Petitioner's claim that the trial court was required to instruct the jury on its own motion on the meaning of "personal infliction." As explained above, the appellate court relied on the California Supreme Court's interpretation that the Legislature was clear in the language of California Penal Code § 12022.7, finding it "applies

12

only to a person who himself inflicts the injury.'" (<u>Id.</u> at 7 (citing <u>Cole</u>, 31 Cal. 3d at 572).) This Court will not interfere with the state court's interpretation of the language used in its statutes when considering jury instructions. See <u>Whipple v. Duckworth</u>, 957 F.2d 418, 422 (7th Cir. 1992), <u>overruled on other grounds</u>, <u>Eaglen v. Welborn</u>, 57 F.3d 496 (7th Cir. 1995) (en banc). Moreover, the appellate court acknowledged that, under California law, the trial court has no duty to instruct a jury on a word or phrase "commonly understood and not used in a technical or legal sense" unless required by a party. (Resp't Ex. F at 7-8 (citing <u>Navarette</u>, 30 Cal. 4th at 503).) Petitioner in the present case did not request an instruction on the definition of "personal infliction" at trial. The Ninth Circuit recognizes that courts "need not define common terms that are readily understandable to the jury." <u>United States v. Somsamouth</u>, 352 F.3d 1271, 1275 (9th Cir. 2003) (quoting <u>United States v. Shryock</u>, 342 F.3d 948, 986 (9th Cir. 2003)).

Second, the appellate court upheld the jury's findings on the enhancement upon determining that the trial court's omission of CALCRIM 3160 was harmless under <u>Chapman</u>. The United States Supreme Court has held that, when a state court finds a constitutional error harmless under <u>Chapman</u>, a federal court may not grant habeas relief unless the state court "applied harmless-error review in an 'objectively unreasonable' manner." <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18-19 (2003) (citations omitted). As the lengthy excerpt, above, makes clear, the appellate court carefully applied the applicable <u>Chapman</u> standard. It did not summarily

13

decide that the instructional error was harmless. Rather, it carefully examined the record. Thus, given the record and the applicable law (discussed in detail by the appellate court), it was not "objectively unreasonable" for the appellate court to conclude that the instructional error was harmless. Id.

In an attempt to show that he is entitled to relief, Petitioner primarily maintains that the jury likely applied the "proximate cause instructions" to its assessment of whether he "personally inflicted" great bodily injury on Narez. (Am. Pet. at 6.) The appellate court determined that the trial court did not instruct the jury to use proximate causation as the basis for determining whether Petitioner "personally inflicted" injury. (Resp't Ex. F at 7.) The appellate court added that the jury's findings on the enhancement were "proper" based on Petitioner's direct participation in causing the accident, and on the jury's rejection of the defense that Lepe caused the accident, by finding Petitioner guilty of counts four and five. (Id. at 8.) The appellate court also found that the instructions given and the written instruction on the enhancement verdict form adequately informed the jury of the relevant legal principles. (Id. at 8-9.) Petitioner has not shown that the appellate court's factual determinations were unreasonable. Accordingly, Petitioner's argument must fail under AEDPA, and this claim is DENIED.

## CONCLUSION

For the foregoing reasons, the Court DENIES the petition for a writ of habeas corpus.

14

Further, a Certificate of Appealability is DENIED. <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases (effective Dec. 1, 2009). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. <u>Id.</u>

The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 9/12/2011



CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

MISAEL E. BARBA-REJON,

        Plaintiff,

v.

DERRAL G. ADAMS et al,

        Defendant.

Case Number: CV09-05052 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 12, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Misael Eduardo Barba-Rejon F36193

L.P.C.C. Yuma Delta #106

5501 N. La Palma Rd.

Eloy, AZ 85131

Dated: September 12, 2011

                Richard W. Wieking, Clerk
                By: Nikki Riley, Deputy Clerk